GARRISON, Judge.
Defendant Charles Hodges appeals from his jury conviction of first degree murder.
On January 29,1980, Charles Hodges was indicted for the murder of Jean Marban while in the perpetration of an armed robbery (R.S. 14:30). Also indicted were David Hendershot and Jesse Johnson.
On August 18, 1982, trial was held and a twelve-member jury unanimously found Hodges guilty as charged. The sentencing phase of the trial was held the following day, and the jury recommended life imprisonment. The defendant was sentenced on August 27, 1982, to serve the rest of his natural life at hard labor without benefit of probation, parole or suspension of sentence. Defendant has appealed.
Defendant requests on appeal only that we examine the record in this case for patent error. We have done so, and find no error patent on the face of the record. The recent case of State v. Raymo, 419 So.2d 858 (La.1982), however, suggests that a record should also be reviewed for sufficiency of evidence under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *268 (1979). Accordingly, we have so reviewed the record.
The facts of the case are as follows. The State’s principal witness, Isadore Fisher, testified that on January 15, 1980, at about 8:25 p.m. he and the victim, Jean Marban, were at Paul’s Grocery and Liquor Store at 8201 Chef Menteur Highway in New Orleans. Jean Marban was tending the store for her uncle, the owner, who was ill. The witness, who was her boyfriend, was keeping her company. Ms. Marban was standing near the register and Mr. Fisher was watching television and playing solitaire, when he heard Ms. Marban say, “Oh, my God.” He looked up and saw a gun in his face and another gun pointed at Ms. Mar-ban. She dropped to the ground, face down, and the man who held the gun on Mr. Fisher ordered her to get up. Mr. Fisher backed off the stool and raised his hands. The man who held the gun on him said they wanted “money, plenty of money.” Mr. Fisher identified David Hendershot as the man who held the gun on him and was giving orders, and identified the defendant, Charles Hodges, as the man who had the gun on Ms. Marban.
Hodges then went behind the counter, instructed Ms. Marban to open the register, and took out all the money. Hendershot walked over to Hodges and told him to bag the change. Hodges said they had no time, so Hendershot scooped out the change and put it in his pockets. Hodges asked for more money and was given bills from a drawer. Hendershot asked for a carton of cigarettes, and when given these, started toward the door.
Hodges then came from behind the counter and went around the front, still facing Ms. Marban and the witness, who was edging closer to the cash register to press the silent alarm. Hodges was backing out with the gun pointing at Ms. Marban and Hen-dershot was walking out the double doors with his back to them. As the witness looked down to press the alarm button, a shot went off, breaking a bottle of liquor on the shelf behind him. He looked at Ms. Marban, who was sagging, and saw that she had been shot. When the alarm button was pressed, Hodges was within two to four feet of the door and twelve to fifteen feet from the victim with his gun pointed at her.
David Hendershot testified that he, Jesse Johnson and the defendant, Charles Hodges, went to Paul’s Liquor and Grocery Store to rob it. He stated that he and Hodges walked into the store and both pulled guns, and the victim screamed and fell on the floor. He said that when he told her nothing was going to happen, she got up, and Hodges went around the counter to empty the cash register. Hendershot said he asked Ms. Marban for a carton of cigarettes, which she gave him. Hodges then pulled some money out of a bottom drawer. Hendershot testified that he started to walk out of the store, and as he got outside the door he heard a shot and the sound of breaking glass, and that when he turned around he saw Hodges come out of the store. Hendershot stated that Hodges told him he had shot out a window. Hendershot also testified that at the time he was “pretty high on angel dust” (PCP), and that Hodges had taken two “hits,” but was fairly coherent.
Charles Hodges testified that he and David Hendershot had gone to Paul’s Package Liquor Store to rob the store, which was Hendershot’s idea. When they entered the store, both with guns drawn, three people were in the store: Mr. Fisher, Ms. Mar-ban and an unidentified person who went up one aisle and ran out of the store. Hodges stated that Hendershot, who was giving the orders, had the gun on Mr. Fisher and that he had his gun on Ms. Marban. Hendershot asked for money and reached over and pushed the button on the cash register, and Ms. Marban started removing the money but was so nervous that Hodges went behind the counter to hurry it up. Hodges stated that he then asked for and was gitfen the money in a bottom drawer, and next asked for some liquor, stashing four fifths of whiskey. Hendershot got a carton of cigarettes and they started to leave.
*269 Hodges’s version of the shooting was that as they were leaving the store, Hendershot went first and was at the door. He, Hodges, was backing out with the liquor in one hand and the pistol in the other hand, holding it up in the air and backing out “kind of fast”. He claimed he was not sure whether Hendershot said something to draw his attention, but he stumbled and as he stumbled, he gripped the gun and it went off. He stated he heard glass shattering and went out the door, and that he had no knowledge whatsoever that anybody was shot. Hodges testified he had not gone to the store with the intention of robbing it or killing anyone and that he did not shoot at either Ms. Marban or Mr. Fisher; the gun was pointed in the air, not at the people, and went off when he stumbled.
On cross-examination the defendant testified that he had been convicted of another armed robbery which took place the same night as the robbery and killing in question. He admitted that the gun went off during that robbery also, but claimed that it went off as he placed it on the floor in order to remove something from a safe.
Our review of the case has revealed a positive identification by an eyewitness who saw the defendant pointing a gun at the victim seconds before the shot was fired, and who further testified that the defendant showed no signs of intoxication or incoherence, or other lack of control over his coordination; the testimony of a coperpe-trator; and the testimony of the defendant himself, who admitted firing the fatal shot. The jury obviously did not believe the defendant’s story that the gun went off accidentally when he stumbled.
The standard of review for sufficiency of evidence is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that each and every element of first degree murder had been proved beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Fuller, 414 So.2d 306 (La.1982). Under the facts as stated above, we believe that standard has been met.
AFFIRMED.